$2^0$

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

**OCT 1 7 2002**

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| FIRST RIO VALLEY MEDICAL, P.A. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. B-02-065 |
| | § | |
| TRAVELERS INDEMNITY COMPANY | § | |
| OF CONNECTICUT | § | |

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES
## TO PLAINTIFF'S AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Travelers Indemnity Company of Connecticut, Defendant, and for its answer to the Amended Complaint filed by First Rio Valley Medical, PA, alleges and states as follows:

### PARTIES

1. Plaintiff First Rio Valley Medical, P.A. ("FRV") is a corporation doing business in Cameron County, Texas.

**Response:** Admitted.

2. Defendant Travelers Indemnity Company of Connecticut ("Travelers") is a corporation that is incorporated under the laws of Delaware and is licensed to do business under the laws of Texas.

**Response:** Denied.

-1-

3.      Defendant Lisa Henry ("Henry") is an individual whose address is unknown at the time of this filing; however, at the time of the filing of Plaintiff's Original Petition in March, 2002, Lisa Henry was an employee of Defendant Travelers.

**Response:**    It is admitted that, at the time the amended complaint was filed, Lisa Henry's address was unknown.  However, since that time Travelers has obtained the following post office box address:  P.O. Box 11185, Englewood, CO 80151. It is also admitted that she was an employee of Travelers in March 2002.

## JURISDICTION

### 2.1    TRAVELERS

3.      FRV filed suit in the District Court of Cameron County, Texas on March 6, 2002.

**Response:**    Admitted.

4.      Travelers removed this case to Federal Court April 2, 2002, asserting that this Court has jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) as the Plaintiff and the Defendant are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

**Response:**    Admitted.

5.      Travelers is listed as a foreign corporation in the records of the Texas Department of Insurance.

**Response:**    Admitted.

6.      To do business in the State of Texas, Travelers is regulated and has agreed to be regulated under the laws of Texas.

**Response:**    Admitted.

7.    The Texas Labor Code requires insurance carriers who participate in the workers' compensation system to retain employees and agents of the insurance carrier in Texas.

**Response:**    Admitted.

8.    Travelers has continuous and systematic contacts with the State of Texas.

**Response:**    Admitted.

9.    Travelers maintains a registered agent for service in the State of Texas.

**Response:**    Admitted.

10.    Travelers has many business offices located throughout the State of Texas.

**Response:**    Denied.  Travelers only has two business offices in the State of Texas.  One is located in Houston, Texas, while the other is located in Dallas, Texas.

11.    Travelers conducts business in Cameron County, Texas.

**Response:**    Admitted.

12.    Travelers was licensed in the State of Texas on January 1, 1919.

**Response:**    Admitted.

13.    Travelers' license to do business in Texas is still active.

**Response:**    Admitted.

14.    Travelers' registered agent for service is CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

**Response:**    Admitted.

15.    Travelers conducts business in Texas.

**Response:**    Admitted.

### 2.2    HENRY

16.    Henry sent an "audit" letter on November 28, 2001 to Manuela Cagigal, a resident

of Brownsville, Cameron County, Texas.

**Response:**    Denied. Travelers was conducting an audit and, in connection with the audit,

Henry sent a letter of investigation. The letter, in and of itself, was not an

"audit."

17.    Henry is an employee of Travelers.

**Response:**    Denied.

18.    Henry is an agent of Travelers.

**Response:**    Denied.

19.    Henry was an employee of Travelers on November 28, 2001.

**Response:**    Admitted.

20.    Henry was an agent of Travelers on November 28, 2001.

**Response:**    Admitted.

21.    Henry was in the course and scope of her employment when she sent the November

28, 2001 "audit for services" letter to Manuela Cagigal.

**Response:**    It is admitted that Henry was in the course and scope of her employment when

she sent the November 28, 2001 letter of investigation to Manuela Cagigal.

-4-

However, it is denied that the letter was a "audit for services," in and of itself.

It was an investigative letter sent in good faith to assist with an audit.

22.    Alternatively, Lisa Henry was acting in conjunction with Travelers.

**Response:**    Denied.  Henry was acting in the course and scope of her employment when

she sent the November 28, 2001 letter of investigation.

## CONDITIONS PRECEDENT

23.    All conditions precedent to Plaintiff's right to bring this action and to recover

damages and to Defendant's liability have been performed or have occurred. FRCP 9(c).

**Response:**    Denied.

## FACTS

**BACKGROUND**

24.    FRV is a licensed health care provider located in Cameron County, Texas.

**Response:**    Admitted.

25.    FRV is a health care provider in the Texas Workers' Compensation system.

**Response:**    Admitted.

26.    FRV has treated patients that have suffered injuries while in the course and scope of

their employment.

**Response:**    Admitted.

27.    Many patients treated by FRV were covered by Travelers.

**Response:**    It is admitted that some patients were covered by Travelers. It is unknown

exactly what FRV means by "many."

28.    Travelers is an insurance carrier.

**Response:**    Admitted.

29.    Travelers is an insurance carrier as defined by the Texas Labor Code.

**Response:**    Admitted.

30.    Travelers is an insurance carrier as defined by the Texas Workers' Compensation

Commission rules.

**Response:**    Admitted.

29.    Lisa Henry is an individual.

**Response:**    Admitted.

30.    Manuela Cagigal was a patient of First Rio Valley Medical.

**Response:**    Admitted.

31.    Manuela Cagigal was a patient of First Rio Valley Medical at the time the "audit for

services" letter made the basis of this civil action was sent.

**Response:**    It is admitted that Manuela Cagigal was a patient of First Rio Valley Medical

at the time the letter made the basis of this civil action was sent. It is denied

that the letter was a "audit for services," in and of itself. It was a letter of

investigation sent in a good faith effort to assist with an audit.

32.    Manuela Cagigal was a patient of Dr. Anh Pham.

**Response:**    Admitted.

33.    Manuela Cagigal was a patient of Dr. Anh Pham at the time the "audit for services"
letter made the basis of this civil action was sent.

**Response:**    It is admitted that Manuela Cagigal was a patient of Dr. Anh Pham at the time
of the letter made the basis of this civil action.  However, it is denied that the
letter was a "audit for services," in and of itself.  It was a letter of investigation
sent in a good faith effort to assist with an audit.

**History Between Travelers and First Rio Valley Medical, P.A.**

34.    FRV has filed numerous lawsuit against Travelers between January 1, 2000 and June
30, 2002 for failure to pay amounts due and owing.

**Response:**    It is admitted that FRV filed numerous lawsuits against Travelers between
January 1, 2000, and June 30, 2002, alleging failure to pay amounts due and
owing.  However, it is denied that, with respect to all such suits, Travelers had
failed to pay amounts that were actually due and owing.

35.    Subsequent to a settlement of numerous lawsuit filed by Robert S. Howell, D.C.
against Travelers, the November 28, 2001 investigative services letter was sent to Ms.
Manuela Cagigal.

**Response:**    Denied.

**The "Audit for Services" Letter of November 28, 2001**

36.    On or about November 28, 2001, Travelers' Investigative Services representative Lisa
Henry sent a letter to Ms. Manuela Cagigal.  Exhibit "1"

-7-

**Response:**    Admitted.

37.    Ms. Manuela Cagigal, according to said correspondence, resided in Brownsville, Texas.  Exhibit "1"

**Response:**    Admitted.

38.    Ms. Manuela Cagigal does not speak English.

**Response:**    Defendant lacks knowledge or information sufficient to form a belief as to whether Manuela Cagigal does or does not speak English.

39.    Ms. Manuela Cagigal does not read English.

**Response:**    Defendant lacks knowledge or information sufficient to form a belief as to whether Manuela Cagigal does or does not read English.

40.    Prior to sending the "audit for services" letter made the basis of this civil action, Lisa Henry investigated to discover if, in fact, Ms. Manuela Cagigal spoke English.

**Response:**    It is denied that, prior to sending the letter made the basis of this lawsuit, Lisa Henry investigated to discover if, in fact, Manuela Cagigal spoke English.  It is also denied that the letter was a "audit for services."

41.    Prior to sending the "audit for services" letter made the basis of this civil action, Lisa Henry investigated to discover if, in fact, Ms. Manuela Cagigal could read English.

**Response:**    It is denied that, prior to sending the letter made the basis of this lawsuit, Lisa Henry investigated to discover if, in fact, Manuela Cagigal could read English. It is also denied that the letter was a "audit for services."

42.     The purpose of the letter made the basis of this civil action was for Travelers to
perform a retrospective "audit for services" rendered by First Rio Valley Medical and Dr.
Anh Pham.

**Response:**     It is admitted that the letter made the basis of this lawsuit was sent in
                  connection with a retrospective audit of First Rio Valley Medical and Dr. Anh
                  Pham.  Otherwise, this allegation is denied.

43.     The purpose of the letter made the basis of this civil action as for Henry to perform
a retrospective "audit for services" rendered by First Rio Valley Medical and Dr. Anh Pham.
The medical services being audited by Travelers were from Texas workers compensation
claim number #D0S8172.

**Response:**     It is admitted that the purpose of the letter made the basis of this lawsuit was
                  to assist Travelers in performing a retrospective audit of First Rio Valley
                  Medical and Dr. Anh Pham.  It is denied that the letter made the basis of this
                  suit was a "audit of services," in and of itself.  It is admitted that the medical
                  services being audited by Travelers were from Texas Workers' Compensation
                  Claim No. D0S8172.

44.     Travelers did not send a copy of the November 28, 2001 Investigative Services letter
made the basis of this civil action to First Rio Valley Medical prior to November 28, 2001.

**Response:**     Admitted.

45.    Travelers did not send a copy of the November 28, 2001 Investigative Services letter made the basis of this civil action to Dr. Ahn Pham prior to sending said letter to Ms. Cagigal.

**Response:**    Admitted.

46.    Lisa Henry did not send a copy of the November 28, 2001 Investigative Services letter made the basis of this civil action to First Rio Valley Medical prior to sending said letter to Ms. Cagigal.

**Response:**    Admitted.

47.    Lisa Henry did not send a copy of the November 28, 2001 Investigative Services letter made the basis of this civil action to Dr. Ahn Pham prior to sending said letter to Ms. Cagigal.

**Response:**    Admitted.

48.    Traveler did not send a copy of the November 28, 2001 Investigative Services letter made the basis of this civil action to First Rio Valley Medical after sending said letter to Ms. Cagigal.

**Response:**    Admitted.

49.    Travelers did not send a copy of the November 28, 2001 Investigative Services letter made the basis of this civil action to Dr. Ahn Pham after sending said letter to Ms. Cagigal.

**Response:**    Admitted.

50.    Lisa Henry did not send a copy of the November 28, 2001 Investigative Services letter made the basis of this civil action to First Rio Valley Medical after sending said letter to Ms. Cagigal.

**Response:**    Admitted.

51.    Lisa Henry did not send a copy of the November 28, 2001 Investigative Services letter made the basis of this civil action to Dr. Ahn Pham after sending said letter to Ms. Cagigal.

**Response:**    Admitted.

52.    Travelers was aware of 28 TEX. ADMIN. CODE § 130.18 at the time Lisa Henry sent the November 28, 2001 Investigative Services letter made the basis of this civil action.

**Response:**    Admitted.

53.    Lisa Henry was aware of 28 TEX. ADMIN. CODE § 130.18 at the time she sent the November 28, 2001 Investigative Services letter made the basis of this civil action.

**Response:**    Defendant lacks knowledge or information sufficient to form a belief as to whether Lisa Henry was aware of Section 130.18 at the time she sent the letter in question.

54.    Travelers was aware of 28 TEX. ADMIN. CODE § 133.300(a) at the time Lisa Henry send the November 28, 2001 Investigative Services letter made the basis of this civil action.

**Response:**    Admitted.

55.    Lisa Henry was aware of 28 TEX. ADMIN. CODE § 133.300(a) at the time she sent the November 28, 2001 Investigative Services letter made the basis of this civil action.

**Response:**   Defendant lacks knowledge or information sufficient to form a belief as to whether Lisa Henry was aware of Section 133.300(a) at the time she sent the letter in question.

56.    Travelers was aware of 28 TEX. ADMIN. CODE § 133.301(a) at the time Lisa Henry sent the November 28, 2001 Investigative Services letter made the basis of this civil action.

**Response:**   Admitted.

57.    Lisa Henry was aware of 28 TEX. ADMIN. CODE § 133.301(a) at the time she sent the November 28, 2001 Investigative Services letter made the basis of this civil action.

**Response:**   Defendant lacks knowledge or information sufficient to form a belief as to whether Lisa Henry was aware of Section 133.301(a) at the time she sent the letter in question.

58.    Travelers was aware of 28 TEX. ADMIN. CODE § 133.301(b) at the time Lisa Henry sent the November 28, 2001 Investigative Services letter made the basis of this civil action.

**Response:**   Admitted.

59.    Lisa Henry was aware of 28 TEX. ADMIN. CODE § 133.301(b) at the time she sent the November 28, 2001 Investigative  Services letter made the basis of this civil action.

**Response:**   Defendant lacks knowledge or information sufficient to form a belief as to whether Lisa Henry was aware of Section 133.301(b) at the time she sent the letter in question.

60.    Travelers was aware of 28 TEX. ADMIN. CODE § 133.301(c) at the time Lisa Henry sent the November 28, 2001 Investigative Services letter made the basis of this civil action.

**Response:**    Admitted.

61.    Lisa Henry was aware of 28 TEX. ADMIN. CODE § 133.301(c) at the time she sent the November 28, 2001 Investigative Services letter made the basis of this civil action.

**Response:**    Defendant lacks knowledge or information sufficient to form a belief as to whether Lisa Henry was aware of Section 133.301(c) at the time she sent the letter in question.

62.    Travelers was aware of 28 TEX. ADMIN. CODE § 133.301(d) at the time Lisa Henry sent the November 28, 2001 Investigative Services letter made the basis of this civil action.

**Response:**    Admitted.

63.    Lisa Henry was aware of 28 Tex. Admin. Code § 133.301(d) at the time she sent the November 28, 2001 Investigative Services letter made the basis of this civil action.

**Response:**    Defendant lacks knowledge or information sufficient to form a belief as to whether Lisa Henry was aware of Section 133.301(b) at the time she sent the letter in question.

64.    The list of medical services listed in the November 28, 2001 letter made the basis of this civil action includes services that were preauthorized pursuant to 28 TEX. ADMIN. CODE Chapter 134.

**Response:**    Admitted.

65.    Travelers never conducted a retroactive "audit" of services provided by First Rio Valley medical via correspondence to patients of Plaintiff before January 1, 2001.

**Response:**    Admitted.

66.    In 2001, the only Cameron County, Texas workers compensation claimants to receive "audit for services" letters from Travelers were patients of First Rio Valley Medical.

**Response:**    Admitted.

67.    In 2001, the only Cameron County, Texas workers compensation claimants to receive "audit for services" letters from Lisa Henry were patients of First Rio Valley Medical.

**Response:**    Admitted.

68.    Travelers did not notify First Rio Valley Medical that it was conducting a retroactive review of medical bills regarding workers compensation claim #D0S8172.

**Response:**    Admitted.

69.    Lisa Henry did not notify First Rio Valley Medical that it was conducting a retroactive review of medical bills regarding workers compensation claim #D0S8172.

**Response:**    Admitted.

70.    Travelers did not notify Dr. Anh Pham that it was conducting a retroactive review of medical bills regarding workers compensation claim #D0S8172.

**Response:**    Admitted.

71.    Lisa Henry did not notify Dr. Anh Pham that it was conducting a retroactive review of medical bills regarding workers compensation claim #D0S8172.

**Response:**    Admitted.

72.    Travelers has a duty to obey the Texas Labor Code.

**Response:**    Admitted.

73.     Travelers has a duty to obey the Texas Workers' Compensation Act.

**Response:**     Admitted.

74.     Lisa Henry had a duty to obey the Texas Labor Code on November 28, 2001 when she sent the "audit of services" letter to Manuela Cagigal.

**Response:**     It is denied that the letter in question was a "audit of services." Otherwise, this
             allegation is admitted.

75.     Lisa Henry had a duty to obey the Texas Workers' Compensation Act on November 28, 2001 when she sent the "audit of services" letter to Manuela Cagigal.

**Response:**     It is denied that the letter in question was a "audit of services." Otherwise, this
             allegation is admitted.

76.     The "audit for services" letters are a form of unfair debt collection.

**Response:**     Denied.

77.     The "audit for services" letters were sent by Lisa Henry as a means to recover monies allegedly overpaid to Plaintiff for medical treatments to Manuela Cagigal.

**Response:**     Denied.

78.     The "audit for services" letters were sent by Lisa Henry as a means to smear the reputation of Dr. Robert S. Howell.

**Response:**     Denied.

79.     The "audit for services" letters were sent by Lisa Henry as a means to scare patients away from First Rio Valley Medical.

**Response:**    Denied.

80.    The "audit for services" letter made the basis of this civil action was not sent in Spanish.

**Response:**    It is admitted that the letter made the basis of this lawsuit was not sent in Spanish.  It is denied that the letter was a "audit for services."

81.    The "audit for services" letters were sent by Lisa Henry with the explicit approval of Travelers.

**Response:**    Denied.

82.    The "audit for services" letters were sent by Lisa Henry with the implicit approval of Travelers.

**Response:**    It is admitted that the letter in question was sent by Lisa Henry with the implicit approval of Travelers.  It is denied that the letter was a "audit for services" letter.

83.    Travelers advised Lisa Henry not to send out the November 28, 2001 "audit for services" letter to Manuela Cagigal.

**Response:**    Denied.

84.    Travelers is responsible for the "audit for services" letter sent out by Lisa Henry made the basis of this lawsuit.

**Response:**    It is admitted that Travelers is responsible for the letter made the basis of this lawsuit.  It is denied that the letter was a "audit for services."

85.   Lisa Henry sent out more than 100 similar "audit for services" letters in November, 2001.

**Response:**   Defendant lacks knowledge or information sufficient to form a belief as to this allegation.

86.   Travelers sent out more than 200 "audit for services" letters to patients residing in Cameron County, Texas.

**Response:**   Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation.

87.   Travelers has singled FRV out for improper purposes as Travelers has not sent out "audit for services" letters to other health care providers in Cameron County, Texas.

**Response:**   Denied.

88.   The actions of Lisa Henry were ratified by Travelers.

**Response:**   Admitted.

89.   The actions of Lisa Henry constitute malice.

**Response:**   Denied.

90.   The actions of Lisa Henry constitute malice on the part of Travelers.

**Response:**   Denied.

**Mitigation of Damages**

91.    Once aware of the November 28, 2001 "audit for services" letter, FRV contacted

Gilbert & Maxwell to represent and protect its interests as a result of this November 28, 2001

letter.

**Response:**    Defendant lacks knowledge or information sufficient to form a belief as to the

truth of this allegation.

92.    Gilbert & Maxwell promptly appeared in Denver, Colorado to personally demand that

Travelers stop sending "audit for services" letters to patients of FRV.

**Response:**    It is admitted that William Maxwell appeared in Denver, Colorado, demanding

that Travelers stop sending letters such as the one made the basis of this

lawsuit.

93.    Travelers has continued to send "audit for services" letters to patients of FRV despite

the personal demand of counsel for FRV to cease and desist such actions.

**Response:**    Defendant lacks knowledge or information sufficient to form a belief as to the

truth of this allegation.

## CAUSES OF ACTION

**COUNT ONE:  UNFAIR BUSINESS PRACTICES**

94.    The freedom to engage in business and compete for patronage of prospective

customers is the hallmark of the free market system in the United States; in essence, Plaintiff

is granted a privilege to compete.

**Response:**    Admitted.

95.    The "audit for services" letters hinders First Rio Valley's privilege to compete in the marketplace for prospective patients.

**Response:**    Denied.

96.    The "audit for services" letters hinders First Rio Valley's privilege to compete in the marketplace for prospective patients.

**Response:**    Denied.

97.    The "audit for services" letters sent by Travelers to patients of FRV constitutes unfair competition on business practices.

**Response:**    Denied.

98.    The "audit for services" letters sent by Travelers to patients of FRV constitutes unfair debt collection.

**Response:**    Denied.

## COUNT TWO:  DISPARAGEMENT

99.    The "audit for services" letters constitutes a publication of disparaging words about FRV's economic interests.

**Response:**    Denied.

100.    The words or implications thereof published in the "audit for services" letter of November 28, 2001 were false.

**Response:**    Denied.

101.    The words published in the "audit for services" letter of November 28, 2001 were published with malice and without privilege, causing damage to Plaintiff.

**Response:**    Denied.

## COUNT THREE:  RETALIATION

102.    The "audit for services" letters sent by Travelers are nothing but an act of retaliation by Defendant in response to the numerous lawsuits filed by FRV against Travelers.

**Response:**    Denied.

103.    There is no basis in fact for the "audit for services" letter of November 28, 2001 sent by Lisa Henry.

**Response:**    Denied.

104.    FRV has suffered damages to its business reputation as a result of this retaliatory act of Travelers.

**Response:**    Denied.

## COUNT FOUR:  CONSPIRACY

105.    To the extent that the conduct of Lisa Henry is not ratified or adopted by Travelers, each Defendant acted together in the sending of the "audit for services" letter of November 28, 2001.

**Response:**    Denied.

106.    The defendants acted to accomplish an object – notably, to discredit the reputation of FRV with its workers' compensation patients.

**Response:**    Denied.

107.    The defendants had a meeting of the minds on its object and/or course of action to meet said course of action made the basis of this lawsuit.

**Response:**    Denied.

108.    The unlawful, overt acts of Defendants proximately caused the damages suffered by Plaintiff in this civil action.

**Response:**    Denied.

## COUNT FIVE:  VIOLATIONS OF THE TEXAS INSURANCE CODE

109.    The contents of the "audit for services" letter of November 28, 2001 made the basis of this civil action contain untrue, deceptive and/or misleading statements.    Said misrepresentations are violative of TEX. INS. CODE ART. 21.21(4)(2).

**Response:**    Denied.

110.    The contents and tone of the November 28, 2001 "audit for services" letter made the basis of this civil action are acts of intimidation, unreasonably restraining FRV in its regular practice of business.  Said actions are violative of TEX. INS. CODE ART. 21.21(4)(4).

**Response:**    Denied.

111.    The contents of the November 28, 2001 "audit for services" letter sent by Defendant made the basis of this civil action are, *interalia*, a failure on the part of Travelers to effectuate a prompt, fair and equitable settlement of a claim.   TEX. INS. CODE ART. 21.21(1)(ii).

**Response:**    Denied.

112.    The contents of the November 28, 2001 "audit for services" letter sent by Defendant made the basis of this civil action are, *inter alia*, a failure on the part of Travelers to state material facts necessary to make the other statements made not misleading under the context of the "audit for services" letter. TEX. INS. CODE ART. 21.21(11)(b).

**Response:**    Denied.

113.    Since the November 28, 2001 "audit for services" letter sent by Defendant made the basis of this civil action was not written in Spanish, its contents are, *inter alia*, a failure on the part of Travelers to state material facts necessary to make the other statements made not misleading under the context of the "audit for services" letter. TEX. INS. CODE ART. 21.21(11)(b).

**Response:**    Denied.

114.    The contents of the November 28, 2001 "audit for services" letter sent by Defendant made the basis of this civil action are, *inter alia*, made in such a manner as to mislead a reasonably prudent person to a false conclusion of a material fact. TEX. INS. CODE ART. 21.21(11)(c).

**Response:**    Denied.

115.    Since the contents of the November 28, 2001 "audit for services" letter sent by Defendant made the basis of this civil action were not in Spanish, the letter is, *inter alia*, made in such a manner as to mislead a reasonably prudent person to a false conclusion of a material fact. TEX. INS. CODE ART. 21.21(11)(c).

**Response:**    Denied.

116.    The "Investigative Services" designation on the letterhead of the "audit for services' letter made the basis of this civil action is designed to mislead the recipients.

**Response:**    Denied.

117.    These violation of the Texas Insurance Code, entirely or independently, caused economic damages to Plaintiff.

**Response:**    Denied.

## COUNT SIX:  TORTUOUS INTERFERENCE WITH ECONOMIC RELATIONS

118.    Plaintiff entered into a valid contract with Manuela Cagigal, providing medical services as a result of injuries incurred while receiving payment for said services through the Texas Workers' Compensation system.

**Response:**    Admitted.

119.    Despite the existence of this valid contract.  Travelers willfully and intentionally interfered with the contract by the sending of its "audit for services" letter on November 28, 2001, indirectly challenging the services of FRV through intimidation and inference to Ms. Cagigal rather than through a proper retrospective audit of the patient files of FRV pursuant to the Texas Labor Code.

**Response:**    Denied.

120.    FRV suffered damages as a result of this tortuous act of Travelers.

**Response:**    Denied.

## COUNT SEVEN:  NEGLIGENCE

121.   Lisa Henry had a duty to obey the prevailing state and federal regarding retrospective audits of patients' bills.

**Response:**   Admitted.

122.   Travelers had a duty to obey the prevailing state and federal laws regarding retrospective audits of patients' bills.

**Response:**   Admitted.

123.   Lisa Henry had a duty to state all facts material to her "audit for services" letter to Manuela Cagigal on November 28, 2001.

**Response:**   Denied.

124.   Travelers had a duty to state all facts material to her "audit for services" letter to Manuela Cagigal on November 28, 2001.

**Response:**   Denied.

125.   Lisa Henry had a duty to state all facts material to her "audit for services" letter to Manuela Cagigal on November 28, 2001 in Spanish.

**Response:**   Denied.

126.   Travelers had a duty to state all facts material to her "audit for services" letter to Manuela Cagigal on November 28, 2001 in Spanish.

**Response:**   Denied.

127.    There was no justification to issue the "audit for services" letter of November 28, 2001 made the basis of this civil litigation.

**Response:**    Denied.

128.    There was no statute authorizing the issuance of the audit for services" letter of November 28, 2001 made the basis of this civil litigation.

**Response:**    Denied.

129.    Lacking such basis, Lisa Henry breached her duties and responsibilities upon the issuance of the November 28, 2001 "audit for services" letter made the basis of this civil action.

**Response:**    Denied.

130.    Lisa Henry was the proximate cause for the damages suffered by FRV as a result of the "audit for services" letter sent on November 28, 2001 made the basis of this civil action.

**Response:**    Denied.

131.    Travelers was the proximate cause for the damages suffered by FRV as a result of the "audit for services" letter went on November 28, 2001 made the basis of this civil action.

**Response:**    Denied.

132.    The aforementioned acts of Lisa Henry and Travelers, jointly and/or severally, constitute negligence *per se*.

**Response:**    Denied.

133.   The aforementioned acts of Lisa Henry and Travelers, jointly and/or severally, constitute gross negligence as that term is defined in Texas statutory and common law.

**Response:**   Denied.

## COUNT EIGHT:   VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT (DTPA)

134.   The retrospective "audit for services" letter of November 28, 2001 was sent as an act of intimidation on a patient of FRV and her interpreter, as the letter was not written in Spanish. Without a clear understanding of Travelers' intent, the letterhead, as well as the content of the letter is misleading to Ms. Cagigal and negatively affects the business reputation of FRV. TEX. BUS. & COMM. CODE § 17.46(a).

**Response:**   Denied.

135.   The retrospective "audit for services" letter of November 28, 2001 is confusing, causes misunderstanding and infers deceptive acts of FRV regarding medical treatments provided to Manuela Cagigal, thus negatively affects the business reputation of FRV. TEX. BUS. & COMM. CODE § 17.46(b)(2).

**Response:**   Denied.

136.   The retrospective "audit for services" letter of November 28, 2001 is confusing, causes misunderstanding and infers a covert investigation by Travelers of Manuela Cagigal as a patient of FRV, thus negatively affects the business reputation of FRV. TEX. BUS. & COMM. CODE § 17.46(b)(3).

**Response:**   Denied.

-26-

137.   The retrospective "audit for services" letter of November 28, 2001 is confusing, causes misunderstanding and infers overt and/or deceptive acts of FRV regarding medical treatments provided to Manuela Cagigal and other such patients of FRV, thus negatively affects the business reputation of FRV.  TEX. BUS. & COMM. CODE § 17.46(b)(8).

**Response:**   Denied.

138.   The retrospective "audit for services" letter of November 28, 2001 is confusing, causes misunderstanding and infers that FRV, by acts of omission and/or commission, deceived the Texas Workers Compensation Commission and Travelers regarding the medical services provided to Manuela Cagigal, thus negatively affects the business reputation of FRV.  TEX. BUS. & COMM. CODE § 17.46(b)(12).

**Response:**   Denied.

139.   As the retrospective "audit for services" letter of November 28, 2001 is a clear act of intimation, misusing Lisa Henry's position, intent and the purpose of the "Investigative Services" division of Travelers to damage the business reputation of FRV.  TEX. BUS. & COMM. CODE § 17.50(a).

**Response:**   Denied.

### DAMAGES

140.   FRV suffered economic damages as a result of the "audit for services" letters sent by Lisa Henry to patients of FRV.

**Response:**   Denied.

141.   FRV suffered a loss of business reputation as a result of the "audit for services" letters sent by Lisa Henry to patients of FRV.

**Response:**   Denied.

142.   Plaintiff incurred costs to mitigate its damages as a result of the "audit for services" letters sent by Lisa Henry to patients of FRV.

**Response:**   Denied.

143.   Plaintiff incurred attorney's fees as a result of the "audit for services" letters sent by Lisa Henry to patients of FRV.  CPRC § 38.001. *et seq.*

**Response:**   Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation.

144.   Plaintiff seeks punitive damages upon a showing of malice on the part of Lisa Henry as a result of the "audit for services" letters sent to patients of FRV.

**Response:**   It is admitted that Plaintiff is seeking punitive damages based upon its allegation that Lisa Henry acted with malice.  It is denied that Plaintiff is entitled to recover punitive damages.  It is also denied that Lisa Henry acted with malice.

145.   Plaintiff seeks all statutory damages as allowed by the Texas Insurance Code for the violations committed by Travelers as a result of the "audit for services" letters sent by Lisa Henry to patients of FRV.

**Response:**   It is admitted that Plaintiff is seeking all statutory damages available under the Texas Insurance Code.  It is denied that Travelers or Lisa Henry violated the

Texas Insurance Code. It is also denied that Travelers or Lisa Henry are liable to the Plaintiff for statutory damages.

146.   Plaintiff seeks all statutory damages as allowed by the Texas Labor Code for the violations committed by Travelers as a result of the "audit for services" letters sent by Lisa Henry to patients of FRV.

**Response:**   It is admitted that Plaintiff is seeking all statutory damages that might be allowed by the Texas Labor Code. It is denied that Travelers or Lisa Henry violated the Texas Labor Code. It is also denied that Travelers or Lisa Henry is liable to the Plaintiff for any statutory damages.

147.   Plaintiff seeks all statutory damages as allowed by the Texas Business & Commerce Code (as allowed under § 17.50(1)) for the violations committed by Travelers as a result of the "audit for services" letters sent by Lisa Henry to patients of FRV.

**Response:**   It is admitted that Plaintiff is seeking all statutory damages allowed by Section 17.50(1) of the Business and Commerce Code. It is denied that Travelers or Lisa Henry violated the Business and Commerce Code. It is also denied that Travelers or Lisa Henry is liable to Plaintiff for damages under the Business and Commerce Code.

### ATTORNEYS FEES

148.   As a result of the statutory, common law and tortuous acts of Defendant, Plaintiff has had to retain counsel and seeks reimbursement for reasonable attorney's fees, as allowed by the Texas Insurance Code, Section 21.21.

-29-

**Response:** It is admitted that Plaintiff has retained counsel and is seeking reimbursement for attorney's fees under the Texas Insurance Code. It is denied that Travelers or Lisa Henry engaged in any statutory, common law, or tortuous acts that required Plaintiff to retain counsel. It is also denied that Travelers or Lisa Henry is liable for attorney's fees to the Plaintiff.

149. Attorney's fees are allowed under CPRC 38.001.

**Response:** It is admitted that Section 38.001 of the Civil Practice & Remedies Code provides for attorney's fees. It is denied that Plaintiff is entitled to recover any such attorney's fees from Defendants in the case at bar.

150. Attorney's fees are allowed under TEX. BUS. & COMM CODE § 17.41, *et seq.*

**Response:** It is admitted that attorney's fees are provided for under the Deceptive Trade Practices Act. It is denied that Plaintiff is entitled to recover attorney's fees from Travelers or Lisa Henry in the case at bar.

## EXHIBITS

151. Plaintiff attaches as Exhibit "1" the "audit for services" sent by Lisa Henry, Travelers Investigative Services representation on November 28, 2001 to Ms. Manuela Cagigal.

**Response:** It is admitted that Plaintiff has attached to its Amended Complaint as Exhibit 1 a letter sent by Lisa Henry to Manuela Cagigal dated November 28, 2001. It is denied that the letter is a "audit for services" letter.

## PRAYER

138. For the aforementioned reasons, Plaintiff asks for judgment against Defendant the following:

     a.    $62,500 in lost income as a result of the tortuous interference of Defendants (or that amount reasonably proved by the preponderance of evidence), jointly and severally;

     b.    $187,500 as punitive damages for the violations of the Texas Labor Code committed by Defendants, jointly or severally;

     c.    $15,000 as costs incurred by Plaintiff in mitigating its damages in this civil action;

     d.    $50,000 for reasonable attorney's fees;

     e.    $25,000 for appellate fees for each level of appeal taken by either party in this civil action;

     f.    All statutory, injunctive, compensable and extraordinary relief as allowed to the degree of culpability of Defendant for violations of the Texas Business & Commerce Code as determined by the trier of fact;

     g.    All statutory and exemplary damages as determined by the trier of fact upon a finding of malice on the part of Defendants, jointly or severally;

     h.    Pre-judgment and post-judgment interest;

     i.    Costs of suit; and

     j.    All other relief that this Court deems Plaintiff entitled, including attorney's fees as shown by Plaintiff at trial for any appellate action taken in this matter.

**Response:**     It is admitted that Plaintiff is asking for judgment against Defendant as stated in paragraph 138. It is denied that Plaintiff is entitled to recover any of the relief prayed for.

WHEREFORE, Defendant Travelers Indemnity Company of Connecticut requests that the Court enter an order dismissing Plaintiff's amended complaint with prejudice; entering judgment in favor of Defendant and against Plaintiff, denying the relief requested by Plaintiff; awarding Defendant its costs herein; and granting such other relief as is just.

## AFFIRMATIVE DEFENSES

NOW COMES Defendant Travelers Indemnity Company of Connecticut, and for its affirmative defenses, alleges and states as follows:

1.     Plaintiff's Amended Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

2.     Plaintiff's First Amended Complaint is barred, in whole or in part, by the affirmative defenses of privilege and justification.

3.     Defendant Travelers asserts that Lisa Henry is not individually liable in the capacity in which she has been sued.

4.     Defendant Travelers asserts that any award of punitive type damages in this case would violate the due process provisions of the Texas and United States Constitutions.

5.     Defendant Travelers asserts its right to enforce all applicable statutory caps on the recovery of punitive type damages.

-32-

6.    Defendant Travelers asserts that the Texas Workers' Compensation Act preempts the other statutory claims, as well as all common law claims, made by the Plaintiff herein.

7.    Defendant Travelers asserts the defense of sovereign or governmental immunity.  In this regard, Travelers would show that such immunity extends to private parties to whom governmental duties have been statutorily delegated.  The rules of the Texas Workers' Compensation commission delegated to Travelers the duty to audit health care providers.  The letters made the basis of this lawsuit, while not "audits" in and of themselves, were investigative letters sent in a good faith effort to assist Lisa Henry's employer with auditing activities under the rules of the Commission.

Wherefore, Defendant Travelers Indemnity Company of Connecticut respectfully requests that the Court enter an order dismissing Plaintiff's Amended Complaint with prejudice; entering judgment in favor of Defendant and against Plaintiff, denying the relief requested by Plaintiff; awarding Defendant its costs herein; and granting such other relief as is just.

Respectfully submitted,

**DUNN & WEATHERED, P.C.**
611 S. Upper Broadway
Corpus Christi, Texas 78401
(361) 883-1594 [FAX 883-1599]

BY: _____

David J. Dunn, Attorney-in-Charge
State Bar No. 06243500; ID 2438
Frank Weathered, Of Counsel
State Bar No. 20998600; ID 2441
**COUNSEL FOR DEFENDANT, TRAVELERS INDEMNITY COMPANY OF CONNECTICUT**

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing has been served on counsel of record in the manner indicated on this date of October 15, 2002.

_____
David J. Dunn

**VIA CMRRR 7002 0860 004 9671 7827**
Mr. Keith T. Gilbert
GILBERT & MAXWELL, P.L.L.C.
P.O. Box 1984
Houston, Texas 77251

-34-